IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            CIV 15-1181 MV/KBM
                                               CR  10-0622 MV

WALTER LEE DEITER,

    Defendant.

## ORDER OVERRULING DEFENDANT'S OBJECTIONS AND ADOPTING THE CHIEF MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on the Chief Magistrate Judge's Proposed Findings and Recommended Disposition ("PF&RD") (*Doc. 23*)[1], filed April 24, 2017, and on Defendant Walter Lee Deiter's Objections to that PF&RD ("Defendant's Objections") (*Doc. 24*), filed on May 8, 2017.

In her PF&RD, the Chief Magistrate Judge recommended that Defendant Walter Lee Deiter's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 be denied and that his claims be dismissed with prejudice. *See Doc. 23.* She concluded that Mr. Deiter had not established ineffective assistance of counsel or prejudice with respect to his trial counsel's reading aloud of excerpts of a belt tape transcript, his failure to obtain EMT reports or to call EMT personnel as witnesses, or his failure to argue that Mr. Deiter's prior bank robbery conviction did not qualify as a predicate offense under the ACCA. *Id.* at 8-15. Similarly, she concluded that Mr. Deiter had not established ineffective assistance or prejudice with regard to the filing of an

---

[1] Citations to "Doc." refer to docket numbers filed in Civil Case No. 16-0563 MV/KBM.

appellate brief by appellate counsel. *Id.* at 15-16.  Finally, the Chief Magistrate Judge recommended that this Court reject Mr. Deiter's position that a conviction for aiding and abetting a federal bank robbery is not a "violent felony" under the force clause of the Armed Career Criminals Act ("ACCA") following *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson II*"). *Id.* at 16-29. Mr. Deiter now asks this Court to reject these recommendations by the Chief Magistrate Judge and to, instead, grant his § 2255 Motion.

When a party files timely-written objections to a magistrate judge's recommendation, the district court will conduct a *de novo* review and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(C). *De novo* review requires the district judge to consider relevant evidence of record and not merely to review the magistrate judge's recommendation. *In re Griego*, 64 F.3d 580, 583-84 (10th Cir. 1995).  "[A] party's objections to the magistrate judge's [PF&RD] must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. One Parcel of Real Prop., with Buildings, Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Here, the Court conducts a *de novo* review of the record and considers Mr. Deiter's objections to the PF&RD, of which there are three: (1) that Mr. Deiter's trial counsel's decision to read aloud portions of the belt tape transcript was constitutionally unreasonable and prejudicial to Mr. Deiter; (2) that Mr. Deiter's prior conviction for aiding and abetting a federal bank robbery in violation of 18 U.S.C. § 2 does not satisfy the ACCA's force clause; and (3) that federal bank robbery under 18 U.S.C. § 2113(a)

does not satisfy the ACCA's force clause. *Doc. 24.* Each of these arguments were made by Mr. Deiter in his briefing to the Court prior to the issuance of the PF&RD; however, he has developed these arguments more fully in his Objections, responding to the analysis of the Chief Magistrate Judge's in her PF&RD.

### A. Whether Trial Counsel's Reading Aloud of Belt Tape Transcript Excerpts was Unreasonable and Prejudicial.

At trial, the undersigned ruled that the belt tape transcripts of Officer Patricia Whelan were not admissible, other than for impeachment purposes. *See Doc. 224* at 247. However, when Officer Whelan's trial testimony revealed that she could not recall portions of the incident in question, Mr. Deiter's trial counsel, Ryan Villa, sought to refresh her recollection with the previously-excluded belt tape transcript. *Id.* at 244. Upon clarifying that he did not seek admission of the transcript, but instead intended to use it only for refreshing Officer Whelan's recollection, the Court permitted Mr. Villa to read portions of the transcript to Officer Whelan in the presence of the jury. *Id.* at 250-54. The portion of the transcript read aloud included a statement by an unidentified witness at the apartment complex that she heard a man yelling at a woman outside and that he "had a gun." *Doc. 225* at 7. Responding to questioning by Mr. Villa, Officer Whelan admitted that the transcript did not include a request that this witness provide her name or address. *Id.* at 9.

Acknowledging that it was a close question, the Chief Magistrate Judge ultimately concluded that Mr. Deiter had not demonstrated that Mr. Villa was ineffective when he read this transcript excerpt, given the strong presumption against such a finding. As to whether Mr. Deiter was prejudiced, she offered the following rationale:

3

> Even if the presiding judge disagrees, finding Mr. Villa's decision to read aloud the transcript unreasonable, Deiter cannot show prejudice in the face of the evidence presented against him. To summarize: the jury heard testimony that Officer Whelan, responding to a middle-of-the-night call regarding an altercation in a parking lot, observed [Mr. Deiter] nervously squatting behind a wall on a second-floor apartment breezeway. When she dispatched a fellow officer to determine what Deiter may have dropped on that breezeway, Deiter began to run. The fellow officer's inspection of the breezeway revealed a holster containing a revolver, which officers testified they did not touch without the use of gloves. A forensic scientist testified that DNA testing revealed that the firearm contained two people's DNA, with Deiter's being the major contributor, and that the holster contained only Deiter's DNA. The scientist also testified that the probability that another Caucasian person would have the same DNA provide as [Mr. Deiter] was one in 140 sextillion.
>
> Officer Whelan's observations, combined with this strong, scientific evidence linking Deiter to the firearm, can only be described as overwhelming evidence that Deiter did in fact possess the firearm in question.

*Doc. 23* at 14.

Without passing upon the reasonableness of Mr. Villa's decision to read aloud portions of the belt tape transcript, the Court agrees with the Chief Magistrate Judge that Mr. Deiter was not ultimately prejudiced by this decision. While Mr. Deiter insists that the transcript provided the only direct evidence that placed the firearm in his hand, the Court cannot say that but for Mr. Villa's reading of this transcript the result of his jury trial would have been any different. *See Ellis v. Raemisch*, 856 F.3d 766 (10th Cir. 2017). While Officer Whelan did not testify to having an unobscured view of Mr. Deiter holding the firearm, she *did* testify that she saw him squat behind the wall in the same location where the firearm was ultimately found. Indeed, Mr. Deiter's conduct led her to dispatch a fellow officer to determine what Mr. Deiter had left behind the wall. As

4

discussed, both the firearm and the holster recovered from the breezeway contained Mr. Deiter's DNA, and the holster contained *only* Mr. Deiter's DNA.

Although the Court, like the Chief Magistrate Judge, questions whether Mr. Villa's decision to read aloud from the belt tape transcript was the most productive strategy, in light of the other evidence presented against Mr. Deiter it is unwilling to say that the decision "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). The Court overrules Mr. Deiter's first objection.

### B. Whether aiding and abetting a bank robbery in violation of 18 U.S.C. § 2 satisfies the ACCA's force clause.

Mr. Deiter argues that pursuant to *United States v. Fell*, 511 F.3d 1035 (10th Cir. 2007) and *United States v. Martinez*, 602 F.3d 1166 (10th Cir. 2010) aiding and abetting a federal bank robbery does not constitute a violent felony under the force clause of the ACCA. *Doc. 24* at 5-9. *Fell* and *Martinez* involved inchoate crimes – conspiracy and attempt, respectively. In *Fell*, the court determined that because conspiracy to commit second-degree burglary did not require a person to perform an overt act directed toward the entry of the building, it did not qualify as a violent felony under the ACCA. *Fell*, 511 F.3d at 1038-44. In *Martinez*, the court concluded that because a defendant could commit second-degree attempted burglary without an act directed toward entry of the building, the "risk of physical injury to another [was] too speculative to satisfy the residual provision of [the ACCA]." *Martinez*, 602 F.3d at 1170. Mr. Deiter argues that, together, these cases stand for the proposition that inchoate crimes, which may encompass only preparatory conduct, do not qualify as violent felonies under the ACCA. *Doc. 24* at 5-7.

5

Following the Eleventh Circuit's lead in *United States v. Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016), and relying upon the Supreme Court's analysis in *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007) and the Tenth Circuit's denial of a certificate of appealability in *United States v. McGuire*, No. 16-3282, 2017 WL 429251 (10th Cir. Feb. 1, 2017) (unpublished), the Chief Magistrate Judge distinguished aiding and abetting from attempt and conspiracy crimes in the context of the ACCA's force clause. *Doc. 23* at 27. This Court, in turn, finds persuasive the rationale set forth in these cases and in the Chief Magistrate Judge's PF&RD and concludes that *Fell* and *Martinez* do not control with respect to Mr. Deiter's aiding and abetting conviction.

Under 18 U.S.C. § 2, "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal." § 2. As such, aiding and abetting under § 2 is "not a separate federal crime, but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense." *Colon,* 826 F.3d at 1305. Indeed, "state and federal criminal law now uniformly treats principals and aiders and abettors alike." *Gonzales*, 549 U.S. at 184. "[T]he acts of the principal become those of the aider and abettor as a matter of law." *Colon*, 826 F.3d at 1305. Therefore, if the substantive offense satisfies the ACCA's force clause, so too does the offense of aiding and abetting that substantive offense. *See id*. As the Tenth Circuit put it in *McGuire*: "That [the defendant] was convicted as an aider and abettor and not as a principal is irrelevant to our analysis [of whether the crime has as an element the use, attempted use, or threatened use of physical force]." *McGuire*, 2017 WL 429251 at *2 n.3.

6

Ultimately, if federal bank robbery satisfies the ACCA's force clause, aiding and abetting a federal bank robbery does as well. The Court overrules Mr. Deiter's second objection.

### C. Whether federal bank robbery in violation of 18 U.S.C. § 2113(a) satisfies the ACCA's force clause.

Mr. Deiter's final objection is that, contrary to the Chief Magistrate Judge's conclusion in her PF&RD, federal bank robbery is not a "violent felony" under the force clause of the ACCA, for two principal reasons: (1) it does not require proof of an intentional threat; and (2) it does not require proof of violent force. *Doc. 24* at 9-14.

First, in support of his position that federal bank robbery does not require proof of an intentional threat, Mr. Deiter notes that his bank robbery conviction was required to meet the elements of § 2113(a) as defined by the Eleventh Circuit, rather than the Tenth Circuit. *Doc. 24* at 10. He explains that the Eleventh Circuit, in *United States v. McCree*, 225 F. App'x 860, 863 (11th Cir. 2007) (unpublished), held that federal bank robbery is a general intent crime which requires only a showing that the defendant knew that he was physically taking the money. *Doc. 24* at 10 (quoting *McCree*, 225 F. App'x at 863). According to Mr. Deiter, "the conclusion that federal bank robbery requires an intentional act of intimidation is incongruent with Eleventh Circuit law because federal bank robbery does not require the intentional use of force, or even implied conduct coupled with actual knowledge that such conduct will be perceived as intimidating. *Id*. But, as it turns out, it is actually Mr. Deiter's position that is incongruent with Eleventh Circuit law.

In *United States v. Jenkins*, 651 F. App'x 920 (11th Cir. June 3, 2016) (unpublished), the court held that federal bank robbery, even when committed by

7

intimidation, satisfies the career offender guideline's force clause, which is identical to the ACCA's force clause.[2] The court in *Jenkins* reasoned as follows:

> "[I]ntimidation" requires the defendant to take actions from which an ordinary person could reasonably infer a threat of bodily harm. The threat of bodily harm is sufficient to qualify as the threatened use of "physical force" or "force capable of causing physical pain or injury to another person. *See Johnson*, 559 U.S. at 140 . . . . Thus, a § 2113(a) offense also qualifies as a crime of violence under U.S.S.G. § 4B1.2(a)'s [force] clause.

*Jenkins*, 651 F. App'x at 925. As the Chief Magistrate Judge explained in her PF&RD, although federal bank robbery may not require the specific intent to intimidate, "[t]he presence or absence of an element of specific intent does not dispositively determine whether a prior conviction qualifies as a violent felony under the ACCA." *Doc. 23* at 22 (quoting *United States v. Ramon Silva*, 608 F.3d 663, 673 (10th Cir. 2010) internal citations omitted)). So long as a crime requires a defendant to intentionally engage in conduct that objectively constitutes the threatened use of physical force, the crime satisfies the ACCA's force clause, even absent the specific intent to communicate such a threat. *See Ramon Silva*, 608 F.3d at 673.

The Court concludes that federal bank robbery by intimidation, which under Eleventh Circuit law occurs when "an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts," *McCree*, 225 F. App'x at 863, satisfies the ACCA's force clause, even if the defendant did not specifically intend those acts to intimidate.

Second, Mr. Deiter insists that federal bank robbery does not require proof of violent physical force. Noting that the phrase "physical force" has been defined as "violent force . . . capable of causing physical pain or injury," Mr. Deiter insists that a

---

[2] *Compare* U.S.S.G. § 4B1.2(a)(1) *with* 18 U.S.C. § 924(e)(2)(B)(ii).

8

robbery statute that requires proof of *de minimus* or even no physical force cannot be considered a "violent felony" under the ACCA. *Doc. 24* at 12 (quoting *Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson I*")).

In support, Mr. Deiter points to a recent Tenth Circuit case, *United States v. Nicholas*, No. 16cv3043, 2017 WL 1429788 (10th Cir. Apr. 24, 2017) (unpublished). There, the court determined that Kansas robbery did not constitute a "violent felony" under the ACCA, finding that Kansas robbery – that is, "the taking of property from the person or presence of another by force or by threat of bodily harm to any person" -- requires "nothing more than de minimis physical contact or the threat of physical contact, which is insufficient to satisfy the ACCA's force requirement." *Id.* at *3. In reaching this conclusion, the Tenth Circuit relied primarily upon *State v. McKinney*, 961 P.2d 1 (Kan. 1998), where the Kansas Supreme Court found that snatching a purse from a victim's arm, without more, satisfied the threat of bodily harm element of the Kansas robbery statute. *Id.* at *3-4.

Mr. Deiter maintains that, like Kansas robbery, federal bank robbery "does not require that any particular quantum of force be used, attempted or threatened." *Doc. 24* at 13. He notes that convictions under § 2113(a) have been upheld even in the absence of an explicit threat of force. For example, he cites *United States v. Slater*, 692 F.2d 107, 108 (10th Cir. 1982), where the court upheld a federal bank robbery conviction after the defendant walked "unhesitatingly" behind a bank counter and began removing cash from a teller's drawer, and *United States v. Kelley*, 412 F.3d 1240, 1244-45 (11th Cir. 2005), where the court upheld a federal bank robbery conviction after the defendant and an accomplice jumped on top of the teller counter and opened an unattended,

9

unlocked cash drawer. In short, Mr. Deiter suggests that because federal bank robbery can be committed without an explicit threat to use violent, physical force, it suffers the same fate under the ACCA as Kansas robbery did in *Nicholas*.

In this Court's view, however, Kansas robbery is distinguishable from the offense of federal bank robbery, though the language of the statutes may be similar in some respects, as it includes an additional and significant statutory element: that the money or property taken *belong to or is in the control or possession of a banking institution*. *See* 18 U.S.C. § 2113(a). Banking institutions, in contrast to private individuals, are known to employ security guards, surveillance, and substantial protections to thwart would-be robbers. And while the modified-categorical approach counsels against consideration of the underlying facts in a particular case, it does not necessitate dispensing with common sense or context.

In the context of a bank robbery, it may actually take very little to communicate a threat of violent, even deadly, force to a reasonable bank teller. Even a statement such as, "You better hand over the money!" communicates an "or else" component when it is delivered to a bank teller absent any conduct or language to allay her fears that she may be subject to physical force. Placing bank employees in fear of the use of violent or deadly force is, uniquely, the operative element that facilitates the taking of a bank's money. *See United States v. Slater*, 692 F.2d 107 (10th Cir. 1982) (holding that a jury could conclude that the elements of § 2113(a) were met, even though the defendant accomplished the taking without a weapon or an explicit threat of the use of physical force, given that "a weapon and a willingness to use it are not uncommon" in the context of a bank robbery).

10

The Court is simply unwilling to agree with Mr. Deiter's suggestion that the sometimes-implicit nature of threats made during a bank robbery dictates that § 2113(a) therefore lacks an element of the use or threatened use of violent, physical force. Instead, the Court finds persuasive the rationale of the District of New Hampshire in *United States v. Kucinski,* No. 16cv201 PB, 2016 WL 4444736 (D.N.H. Aug. 23, 2016):

> § 2113(a) does not require "an explicit threat of force . . . to establish intimidation." A demand note can therefore constitute intimidation, because the note is an implied threat to use force if the teller refuses the robber's demands. Indeed, the threat of physical force is what makes the demand effective – the teller gives the robber money "because she reasonably fear[s] that the robber would use force if [she] did not satisfy his demands." . . . The same is true of the ACCA. Nothing in the ACCA's text requires an <u>explicit</u> threat of physical force.

*Id.* at *4 (internal citations and parentheticals omitted). The Court agrees with the Chief Magistrate Judge that federal bank robbery, even by intimidation, has as an element the threatened use of force of the type contemplated in *Johnson I*. *See United States v. Enoch*, No. 15cr66, 2015 WL 6407763, at *3 (N.D. Ill. Oct. 21, 2015) ("Because intimidation requires a threat, albeit in some cases an implied threat, of violent physical force, robbery [under § 2113(a)] is a crime of violence within the meaning of section 924(c) even though it can be committed by intimidation rather than actual violence.").

Mr. Deiter makes a related argument that "simply placing a person in fear of bodily harm does not necessarily require the use of violent *physical* force." *Doc. 24* at 14 (emphasis in original). He suggests that a person could conceivably commit federal bank robbery through intimidation by threatening to poison a teller, which, even if it put the teller in fear of bodily harm, would not constitute the threatened use of violent,

physical force. *Id.* In addition to being more theoretical than realistic,[3] Mr. Deiter's argument fails for additional reasons.

In *Johnson I*, the Supreme Court examined the phrase "physical force" as used in the ACCA's force clause. While the Court determined that "physical force" meant "violent force" or "force capable of causing physical pain or injury to another person," it also separately considered the meaning of each of the terms, "physical" and "force." *Johnson*, 559 U.S. at 134. It defined "physical" as a "force exerted by and through concrete bodies – distinguishing physical force from, for example, intellectual force or emotional force." *Id.* at 138; *United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017) (quoting *Johnson I*). It defined "force" in a number of ways, including "[p]ower, violence, compulsion, or constraint exerted upon a person." *Johnson*, 559 U.S. at 139. In the Court's view, these definitions, particularly the definition of "physical," suggest that while mere offensive touching will not suffice under the ACCA's definition of "physical force," the Supreme Court has not necessarily foreclosed the inclusion of offenses that involve the use of "physical force" through *indirect* means.

Later, in *United States v. Castleman*, 134 S. Ct. 1405 (2014), the Supreme Court again examined the phrase "physical force," this time in the context of 18 U.S.C. § 921(a)(33)(A). *Id.* at 1414. The Court rejected the notion that "deceiving the victim into drinking a poisoned beverage" did not constitute "physical force." *Id.* at 1414-15. It explained that "[t]he use of force . . . is not the act of sprinkling the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." *Id.* at 1415.

---

[3] When construing the minimum culpable conduct for an offense, such conduct only includes that in which there is a "realistic probability, not a theoretical possibility" that the statute would apply. *United States v. Harris*, 844 F.3d 1260, 1264 (2017).

12

The Court posited that a contrary conclusion might permit defendants to argue "that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." *Id.*

While *Castleman* dealt with a different statutory provision,[4] and even distinguished the meaning of "physical force" there from the meaning of "physical force" under the ACCA, *see id.* at 1409-13, courts have nevertheless drawn upon *Castleman's* rationale and concluded that the differences between the statute at issue there and the ACCA are not material on the issue of what it means to "use" physical force. *See, e.g., Kucinski*, 2016 WL 4444736, at *4–5 (concluding that the logic used in *Castleman* to define the "use of physical force" extended to the ACCA's force clause); *see also United States v. Williams*, No. 15cr0069 JDL, 2016 WL 1555696, at *8 n.13 (D. Me. Apr. 15, 2016); *United States v. Bell*, No. 15cr0258 WHO, 2016 WL 344749, at *8 (N.D. Cal. Jan. 28, 2016). This Court agrees that the Supreme Court's analysis of what it means to *use* physical force in *Castleman* is helpful even in the ACCA context.

Contrary to Mr. Deiter's position, the Court finds that *Johnson I* and *Castleman*, taken together, instruct that a threat to use *indirect* physical force during a bank robbery,

---

[4] In *Castleman*, the issue was whether a particular offense fell within 18 U.S.C. § 922(g)(9), which prohibits a person who has been convicted of a "misdemeanor crime of domestic violence" from possessing a firearm or ammunition. *See* § 922(g)(9). With exceptions not applicable, a "misdemeanor crime of domestic violence" is defined as an offense that (1) is a misdemeanor under Federal, State, or Tribal law, and (2) which "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of a victim . . ." § 921(a)(33)(A). The defendant in *Castleman* argued that his predicate offense did not have as an element the "use of physical force." *Castleman*, 134 S. Ct. at 1409. The district court agreed with him based upon the theory that one could commit the offense at issue by causing bodily injury without "violent contact," for example by poisoning their victim. *Id.* The Supreme Court ultimately disagreed with the defendant, however, concluding that in contrast to the ACCA, Congress incorporated the common-law meaning of "force" – that is, even offensive touching – into § 921(a)'s definition of a "misdemeanor crime of domestic violence." *Id.* at 1410. The Court explained that "'[d]omestic violence' is not merely a type of 'violence'; it is a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context." *Id.* at 1411.

13

such as a threat to use poison, still qualifies as a threat to use violent, physical force under the ACCA. After all, the administration of poison would, no doubt, have a harmful, violent effect on the body of the one who ingests it. *See United States v. Pena*, 161 F. Supp. 3d 268, 282 (S.D.N.Y. 2016) (reasoning, in the context of § 924(c), that poisoning a person would constitute the use of *Johnson I* physical force, as "poison can certainly be a strong enough force to cause physical pain or injury to another person"). Furthermore, given the Tenth Circuit's recent acknowledgement that even a "slap in the face," may rise to the level of violent, physical force, *see Harris*, 844 F.3d at 1265, it would be incongruous to hold that the administration of poison would not constitute *Johnson I* physical force.

For all of these reasons, and because it appears that the Tenth Circuit has adopted the majority view that federal bank robbery has as an element the use, attempted use, or threatened use of physical force, s*ee McGuire*, 2017 WL 429251 at *2-3,[5] the Court overrules Mr. Deiter's final objection.

**IT IS THEREFORE ORDERED** that Mr. Deiter's Objections to the Proposed Findings and Recommended Disposition (*Doc. 24*) are hereby **OVERRULED;**

**IT IS FURTHER ORDERED** that the Chief Magistrate Judge's Proposed Findings and Recommended Disposition (*Doc. 23*) is hereby **ADOPTED;**

**IT IS FURTHER ORDERED** that Mr. Deiter's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (*Doc. 3*) is hereby **DENIED**, and his claims are dismissed with prejudice.

---

[5] The Tenth Circuit, in *McGuire*, concluded that no reasonable jurist would debate a district court determination that federal bank robbery satisfies the force clause of the career offender guideline. *McGuire*, 2017 WL 429251, at *2-3.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED**.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE